DECKER v. SALTSMAN, administrator, *et al.*, appellants.

*Contract — against public policy — assignment of bounty. Pleadings — amend-
ment of. Money had and received.*

Defendant's son being liable to be drafted in 1864, defendant entered into an
agreement with plaintiff whereby defendant agreed to pay plaintiff $500,
and that plaintiff should have all the county and town bounties which the
son, or any substitute plaintiff should procure, would be entitled to, if plain-
tiff would furnish and put into the service a substitute for the son, which
would clear him from the draft. Plaintiff accordingly furnished W. as a sub-
stitute and received the $500 and the county bounty. Subsequently the town
voted an additional bounty, payable to the substitute, and defendant received
a portion of it, which he refused to pay over to plaintiff. In an action for
money had and received by defendant to plaintiff's use, *held*, that the agree-
ment did not confer upon plaintiff any right to the money, because the bounty
did not, when created, become the property of defendant, and because it was
a mere contingent possibility not coupled with an interest, and not capable
of being sold; also, that the agreement was void, as being a gambling contract
and against public policy.

Under a complaint which presents a claim "for money which defendant had
of plaintiff for defendant's own use," the plaintiff cannot recover on a demand
in favor of a third person against defendant and assigned to plaintiff.

It seems that after a cause has been tried and appeal taken to the general
term where a new trial is ordered, it is too late to allow an amendment of
the complaint setting up a new cause of action.

APPEAL from a judgment of the Cortland county court and
from an order denying a new trial. This action was tried in a
justice's court October 19, 1865; retried in county court March,
1866, and the general term granted a new trial in May, 1868.
PARKER, J., writing the opinion of the court, which was as follows :

PARKER, J. This action was originally brought in a justice's
court, and came to the county court of Cortland county by appeal,
where it was re-tried, and a verdict given for $107 for the plaintiff.
A motion was made for a new trial upon a case and exceptions
which was denied, and from the order denying the motion an appeal
to this court is taken.

The complaint is for money had and received by defendant, to
plaintiff's use, and the facts relied upon by plaintiff are as follows :
In August, 1864, the defendant's son being liable to be drafted
under the call of the President for 500,000 men, the defendant

entered into an agreement with the plaintiff whereby he agreed to pay him $500, and that he, the plaintiff, should have all the county and town bounties that his son, or any substitute he should procure, would be entitled to, if he, the plaintiff, would furnish and put into the service a substitute for his son, which would clear him from both the United States and the State militia draft.

The plaintiff did furnish the substitute for three years' service, or during the war, who was regularly enrolled, and was credited to the town of Virgil, in the county of Cortland, where the defendant and his son resided.

The defendant paid the plaintiff the $500, and the plaintiff obtained the county bounty of $500 which was then being paid for volunteers and substitutes.

Subsequently, and on the 10th of September, 1864, the town of Virgil, at a special town meeting, passed the following resolution:

"*Resolved,* That we pay the sum of $425 to each volunteer and substitute who have or shall enlist and be credited to the town of Virgil upon the quota of said town under the last call of the President for 500,000 men, and who have or shall be mustered into the United States service."

On the 10th of November following, the defendant presented to the town board a claim "for $100 balance on town bounty for three years' man furnished as a substitute," which claim was paid out of the money voted on the 10th day of September, as above stated.

The plaintiff, claiming that he was entitled to the town bounty, afterward demanded the $100 of the defendant, and on his refusal to pay it over to him, brought this suit.

Neither of the parties to this action had any claim whatever upon this town bounty; the arrangement was not in any respect based upon the faith of it. It had not at the time of such arrangement been voted, nor, so far as appears, even contemplated. By the terms and spirit of the resolution it was provided for the volunteer or substitute who had enlisted or should enlist and be credited to the town. No one but West, the substitute, or his assignee, therefore, was entitled to it. One hundred dollars of this bounty thus belonging to West the defendant obtained from the town authorities. Granting that the terms and intent even of the agreement between the parties included this among the bounties which the defendant agreed the plaintiff should have, the question arises, what is the effect of such agreement in regard to the bounty in question?

Manifestly, it did not confer upon the plaintiff any present or prospective right to that bounty — both because the bounty did not, when created, become the property of the defendant, and because if it had, it being, at the time of the arrangement, no existing right or property, but a mere contingent possibility not coupled with an interest, it was incapable of being sold. 1 Pars. on Cont. 523; 1 Pet. 193–213. And not only was there no property in the bounty transferred to the plaintiff, but the agreement did not and could not operate to bind the defendant to pay over the moneys received by him from the town authorities on account of the bounties. Even if the agreement can be construed to intend such effect, still, I think, what Judge COWEN said in *Munsell* v. *Lewis*, 4 Hill, 641, 642, correct, when applied to parties situated as these were. After adverting to the proposition that, although a man cannot assign moneys to be recovered for a personal tort " *eo nomine*," yet he may bind himself to pay them when received by him. He says: " But I deny that a man may traffic even to that extent in the charity of his neighbors, or the prospective bounty of his government."

Without questioning the modified doctrine held in *Carver* v. *Creque*, 46 Barb. 507, that where a recruit enlisted in anticipation of the bounty then about to be voted, and in the expectation that it would be realized by him, he had an equitable right to it as subsequently voted; which right he could sell and transfer before the vote was taken, so that when the proceedings ripened into a legal claim in his favor against the town for the amount of the bounty, it vested as such in the assignee; still, I think, that, as between these parties, both outsiders, having no connection with or relation to the bounty, either as being the persons for whom it was intended, or assignees or transferees of such persons, the more stringent doctrine of Judge COWEN applicable.

A contract between such persons, that as between the two, one shall be entitled to the bounty, if granted to the exclusion of the other, must be entirely nugatory; for besides the objection, that neither will have any interest as is known to each, in the bounty — the subject-matter of the contract, if granted, it is against public policy to permit such gambling contracts to be made between outsiders, in reference to soldiers' bounties thereafter to be voted and offered, not only as tending to corrupt influences in procuring them to be offered, but also as tending to deprive the persons for whom

they were intended of the due benefit of them. The contract, as claimed by the plaintiff, appropriates the then existing and· all prospective bounties offered, and to be offered, to the soldier who should enlist, and which then belonged or would belong to West, the substitute, by an agreement of the parties, to the plaintiff. It does not contemplate a purchase by defendant from West, of the bounty, for the purpose of handing it over to plaintiff, but proceeds upon the idea of an independent appropriation of it by these parties, without further right to it than should accrue to them, or one of them, upon its being voted.

It involves, if carried out, a palpable invasion of the soldiers'' rights, and perversion of the objects of those who should vote the bounty. Both because the contract is against public policy, and because the subject-matter of it is not capable of being assigned, nor made the subject of an agreement to assign, no cause of action was shown against the defendant.

In language of Judge COWEN, in *Munsell* v. *Lewis, supra,* " a simple expectancy, in which the assignor has no interest, and which is unpurchaseable, can neither be assigned, nor could a contract for future assignment be valid. A mere *jus precarium,* a right resting in courtesy, is no more a matter of bargain than the virtue from which it emanates." The order appealed from should be reversed and a new trial in the county court granted, with costs to abide the event.

The case came on for retrial at the Cortland county court in March, 1869, where the following order was made : " That the plaintiff have liberty to amend the complaint in this action, by inserting such averments as are necessary to support the proof that the plaintiff, before the commencement of this action, purchased and took an assignment of the bounty money voted by the. town of Virgil to one William West, and that the defendant received said money."

From this order the defendant appealed to the general term, where the order was reversed. The case was tried in September, 1870, when a verdict was rendered for plaintiff for $138.50. An appeal was taken by defendant to the general term, where, in November, 1871, the judgment of the county court was reversed and a new trial granted. The last trial occurred in March, 1872, when the plaintiff had a verdict for $148.42. John Saltsman, the defendant, died in March, 1872, and Phebe R. and Frank F. Saltsman, admin-

istratrix and administrator, were substituted. The present appeal is from the judgment on the verdict in favor of plaintiff, and from an order denying a new trial.

*M. M. Waters.* for appellants.

*Ballard & Warren,* for respondent.

BOCKES, J. This action originated in a justice's court, and came into the county court of Cortland county by appeal, in which latter court it has been three times tried.

It appears from the opinion of Mr. Justice PARKER that a new trial was granted, after the first trial in the county court, on the ground that the plaintiff showed no right or title to the money claimed by him in the action. He held: First, that there was no privity of contract shown between the parties; second, that the claim at the time of the alleged agreement with the defendant was no more than a mere contingent possibility, not coupled with an interest, hence was incapable of being sold and transferred; and, third, that the alleged agreement between the parties was against public policy and void.

This opinion was adopted by the court, and became the law of the case as applicable to the facts proved on the first trial; and doubtless it controlled the decision after the second trial. To the decision of the court thus pronounced at two general terms we owe respectful obedience. Unless, therefore, the case now before us is different from that considered by Mr. Justice PARKER in his opinion, we must abide by the conclusions there declared. The only difference claimed to exist between the case now before us and that formerly before the court is this: That an assignment of the claim is now proved, from West to the plaintiff. On the former trial (the first one) this transfer was not shown, and it is supposed by the plaintiff's counsel that this evidence relieves the case from the difficulties in the way of a recovery stated by Mr. Justice PARKER. But here arises a question raised by the objection to this evidence. The complaint is simply for money had and received by the defendant to plaintiff's use. There is no allegation in the complaint that the claim originally belonged to West, and that he sold and transferred it to the plaintiff. The plaintiff does not claim in the complaint as the assignee of West. If he claimed as the assignee of West, he

should have alleged a cause of action by West against the defendant and a transfer thereof by West to himself. The complaint contains no such averments, but is a simple complaint for money had and received. Under this complaint, it was not competent for the plaintiff to make a case as assignee, through a sale and transfer from West to himself of the cause of action.

Were this a mere variance between the pleading and the proof, an amendment might have been allowed in the court below, and might doubtless yet be allowed by this court on the appeal, to meet and answer the objection. But it is more than a mere variance between the pleading and the proof. The evidence tended to show an independent and different cause of action from that stated in the complaint: a cause of action in favor of West assigned to the plaintiff, not a cause of action in favor of the plaintiff for money had and received to his use. *Union Bank* v. *Mott*, 30 Barb. 389; *Whittaker* v. *Merrill*, 18 How. 506, on page 508. The objection was distinctly taken, that the evidence was inadmissible under the complaint. There was no averment that the plaintiff claimed the money as assignee, and the evidence of the assignment by West to him was improperly received. Nor can its introduction be deemed immaterial and harmless. The judge laid great stress on this evidence in his charge to the jury. Indeed, he gave the jury to understand that without evidence of a transfer of the claim by West to the plaintiff there could be no recovery.

It seems very plain that on the complaint, which presents a claim merely "*for money which defendant had of plaintiff for defendant's own use*" (this is the language of the pleading), the plaintiff cannot be allowed to recover on an assigned demand. The recovery on a claim assigned by West to the plaintiff was unauthorized in this case.

This difficulty stands directly in the way of a recovery in this action, if it be necessary to show a transfer of the claim from West to the plaintiff. This position presupposes that West, the substitute, was entitled to the bounty-money, $100 of which the defendant had obtained. So this court held — Judge PARKER says, "no one but West, the substitute, or his assignee, was entitled to it — one hundred dollars of this bounty, thus belonging to West, the defendant obtained from the town authorities." It follows, therefore, that the plaintiff must base his action on a transfer of the claim from West to himself. This he omitted to do. No such right of action is stated or suggested in the complaint.

We are cited to the case of *Barber* v. *Marble,* 2 N. Y. Sup. 114, as an authority in favor of allowing an amendment to meet the difficulty above considered. That case differs from this in many of its facts; one of which is (and this is a very important one) that the case as made on the evidence was substantially embraced within the issues presented by the pleadings. In this view, of course, an amendment was properly allowed to conform the pleading to the facts proved. It was not introducing a new and different cause of action. And here again we are met by the former decision of this court in this case, reversing an order of the county court which allowed the precise amendment now desired. That decision made at a recent term of this court, in this case, must be now observed. On what ground that decision was made we are uninformed, as no opinion was written; but we must, I think, infer that the order was reversed on the ground that an amendment of the complaint setting up a new cause of action was improper at that stage of the case.

But according to the opinion of Mr. Justice PARKER, which, having been adopted by this court, as above stated, must now be accepted as the law of this case, there are other reasons why the plaintiff cannot recover in this action. It was decided in this case on the former appeal, that the plaintiff could not recover on the agreement made between the plaintiff and defendant, to the effect that the former should have all the bounty-money to which West, the substitute, should be entitled. Mr. Justice PARKER says, " Granting that the terms and intent of the agreement between the parties included this among the bounties which the defendant agreed the plaintiff should have, the question arises, what is the effect of such agreement in regard to the bounty in question?" He then proceeds to consider this question at length, and comes to the conclusion stated in the former part of this opinion, to wit: That the claim at the time of the alleged agreement was a mere contingent possibility, not coupled with an interest; hence was incapable of being sold. Also, that the alleged agreement was against public policy, and void. Those conclusions we do not now propose to re-examine, inasmuch as they have already received the sanction of this court at two general terms. Even were we disposed to question the soundness of those conclusions, the concurrence in opinion by those learned judges who then composed the court should stand as against our own on this subsequent presentation of the same case. It should be added here that some of the views of

the court, as expressed in the opinion of Mr. Justice PARKER, are supported by the more recent decision in *Butterworth* v. *Gould*, 41 N. Y. 450, and in *Osby* v. *Conant*, 5 Lans. 310. It seems, therefore, that the plaintiff failed to establish a cause of action, and the county court should have directed judgment for the defendant.

*Judgment reversed and new trial ordered.*