THE PRESIDENT, DIRECTORS, AND COMPANY OF THE UNION BANK OF TENNESSEE, APPELLANTS, *v.* MICAJAH J. VAIDEN AND JOHN H. KEITH, ADMINISTRATORS OF WILLIAM JOLLY, DECEASED.

Where a suit was brought in the United States court by citizens of another State against a citizen of Mississippi, who appeared to the suit, pleaded and then died, after which the suit was revived against his administrators, and judgment obtained against them, the following proceedings of the probate court afford no bar to the recovery of the claim :—

1. A declaration by the probate court that the estate was insolvent, and a reference of the matter to a commissioner in insolvency.
2. A publication notifying the creditors of the estate to appear and file their claims, or be forever barred of their demands.
3. A report by the commissioner, leaving out the claim in question, which report was confirmed by the court.

Where the estate turned out not to be insolvent, but a fund remained in hand for
distributees, the creditors can recover by a bill in chancery against the administrators,
notwithstanding the proceedings in the probate court.

The law of a State, limiting the remedies of its citizens in its own courts, cannot be
applied to prevent the citizens of other States from suing in the courts of the
United States in that State, for the recovery of any property or.money there, to
which they may be legally or equitably entitled.

THIS was an appeal from the district court of the United
States for the northern district of Missisippi.

The facts of the case are stated in the opinion of the court.

It was argued by *Mr. Coxe*, for the appellants, and *Mr. Stanton*,
for the appellees.

Mr. Justice WAYNE delivered the opinion of the court.

This is an appeal from the district court for the northern
district of Mississippi.

The appellants filed a bill in December on the equity side of
the district court against the appellees.

"The bill charges that in November, 1846, the bank in-
stituted a suit on the law side of the same district court against
William Jolly, as indorser of a bill of exchange held by
plaintiffs. Jolly appeared to the suit, and filed his plea. He
died in March, 1847, and appellees were appointed his adminis-
trators by the Panola court of probate, in Mississippi. The
suit against Jolly was revived against his administrators, the
appellees, and in June, 1851, the same came on for trial on the
issue joined on the single plea of *non assumpsit*, and a judg-
ment was rendered in favor of plaintiff for $5,041.33 with costs.
Upon this judgment execution was issued, which was returned
by the marshal *nulla bona*. The judgment remains wholly
unpaid, and there is no visible property in the hands of the
administrators upon which a levy could be made.

The bill proceeds to charge, that pending the said suit against
the administrators in April, 1848, they represented to the said
probate court of Panola county, that the estate of their intestate
was insolvent, and procured a declaration to be made by said
court to that effect, whereas the bill charges that said estate was
not and is not insolvent, and that the assets in the hands of the
administrators are more than sufficient to pay all the liabilities
of the estate. That the administrators have converted the
assets into cash to the amount of upwards of $20,000, and
have fully paid all the debts of intestate, with the single excep-
tion of that due to complainant. The debts they have paid
amount to about $11,000, and the administrators have upwards
of $9,000 in cash or available assets belonging to the estate,
which is not required for the payment of any other debt, but
refuse to apply any part thereof to the payment of complain-

ant's debt, and will shortly pay the same over to the heirs at law of Jolly, unless prevented by the interposition of the court.

The defendants pretend that complainants have no right to require payment of their judgment out of said assets, because they have not established the claims upon which the judgment is founded before the probate court of Panola county, and had the same allowed by said court, but complainants are advised and insist that such allowance by said probate court is not necessary.

Sundry special interrogatories are appended to the bill.

In June, 1852, defendants filed their answer. The principal averments in the bill are admitted—it is admitted that they have received assets to the amount of $20,000; that they have paid all the debts which have been legally established against the estate to the amount of more than $13,000, and have in their hands assets to the value of $6,500, and that if complainant's claim is disallowed, the estate will be worth to the heirs about $6,000. They are advised that complainant's judgment is barred, and if they were to pay it, they would pay it in their own wrong.

They deny that they did illegally or fraudulently procure the estate to be declared insolvent. When they took charge of the estate as administrators, it was appraised at $18,090.76½, and debts or claims against it were brought to the notice of respondents $18,597.40. Respondents, looking to probable results, believed it might prove and would probably prove insolvent; under these circumstances they procured the declaration. The clerk was appointed commissioner of insolvency, and publication was made for the period of twelve months, warning all creditors of Jolly to present their claims to the commissioner for allowance. In April, 1849, the commissioner made his report, and an order was passed requiring all persons interested to appear and except to the report at July term, 1849—at July term respondents alone excepted to the report, they excepted to two claims which had been allowed, one of these claims was allowed, the other disallowed; and in October term, 1849, the report was approved and confirmed—p. 8. Respondents append a transcript to these proceedings, and rely upon the same as a bar to complainant's claim."

To the answer of the defendants a general replication was filed, and, on the hearing of the cause, the court decreed a dismissal of the complainant's bill.

In the argument of the case in this court, the counsel of the defendants urged the following grounds against the right of the complainants to recover:—

"If the complainant's demand is not barred by their failure to

present it in the probate court, their remedy is at law, and not in equity. The defendants admit that they have $6,000 in their hands, belonging to the estate of their intestate. If they are bound to pay this to the complainants, and refuse to do so, they are guilty of a *devastavit*, and are liable to an action on their bond. In their answer, they expressly deny that complainant (the bank) has made out a cause entitling it to relief in the premises, and that this court has jurisdiction thereof.

"But the complainants are entitled to no relief, either in equity or at law.

" The defendants cannot be prejudiced by suffering judgment to go against them on the plea of *non assumpsit*. Hutchison's Code, 657, § 57. Hemphill *v.* Fortner, 11 Sm. & Mar. 344.

" The decrees of probate courts, in case of estates reported insolvent, cannot be questioned or set aside, unless by a regular appeal taken, or on account of fraud. Hutchison's Code, 667, 668, 673, 683, 684. Chewning *v.* Peck, 6 How. Mi. Rep. 524. Smith *v.* Berry, 1 Sm. & Mar. 321. Addison *v.* Eldridge, 1 Ib. 510. Herrings *v.* Wellons, 5 Ib. 354. Dalgren *v.* Duncan et al. 7 Ib. 280.

"Insolvency may be declared when the debts appear to be greater than the probable value of all the real and personal property. The court has a discretion, which, when exercised, is conclusive, unless a direct appeal be taken. Saunders's Adm'r *v.* Planter's Bank, 2 Sm. & Mar. 304.

" As to the responsibility of an administrator who pays debts, when the estate subsequently becomes insolvent, see Woodward *v.* Fisher et al. 11 Sm. & Mar. 304. Bramblet *v.* Webb et al. 11 Ib. 438.

" Creditors whose claims have not been presented to the commissioner, are forever barred, even when the estate proves not to be insolvent. Allen and Apperson, *v.* Keith and Vaiden, 26 Miss. Rep. 232. Anderson *v.* Tindall, 26 Miss. Rep. 332.

" The creditor must present his claim to the commissioner of insolvency, though he have a suit pending against the administrator. Trezevant et al. *v.* McQueen, 13 Sm. & Mar. 311.

" And when a commission of insolvency has been regularly opened and closed, it will not be reopened, even at the instance of a judgment creditor, whose judgment bears date since the closing of the commission. Harrison *v.* Motz et al. 5 Sm. & Mar. 578.

" The foregoing authorities must be deemed conclusive against the appellants, unless the rendition of a judgment by a federal court can be held to take away from the probate courts their exclusive jurisdiction, in the administration of the assets of deceased insolvents. But there can be no doubt that the

laws of the State, from which the executor or administrator derives his authority to act, must prevail, as well in the federal as in the state tribunals. Citizens of other States, possibly, cannot be prevented from suing in the federal courts in order to establish their demands; yet the effect of the judgment, its lien, or other operation upon the assets of the deceased, must be absolutely controlled by the local law; otherwise the conflict of jurisdictions would be irreconcilable and disastrous. And such, it is believed, is the well-established doctrine of this and all other courts. Story's Conflict of Laws, 3d ed. § 521. Williams v. Benedict, 8 How. Sup. C. R. 107. McGill v. Armour, 11 How. Sup. C. R. 142."

But we do not deem it necessary to discuss them in detail, for the law of a State limiting the remedies of its citizens in its own courts, cannot be applied to prevent the citizens of other States from suing in the courts of the United States in that State for the recovery of any property or money there, to which they may be legally or equitably entitled. This principle was fully discussed, and decided by this court in the case of Suydam v. Brodnax, and others, 14 Pet. 67. We refer to the reasoning in support of it given in that case without repeating it, or thinking it necessary to add any thing on this occasion. It concludes this case.

And it is our opinion, under the circumstances and the testimony in this case, that the surplus in the hands of the defendants must be applied to the payment of the judgment of the complainant in preference to any claim which has been asserted to it for the heirs at law or distributees of the intestate, Jolly. We reverse the decree of the court below, and shall remand the case with directions to that court for further proceedings in conformity with this opinion.