**TATSUUMA KISEN KABUSHIKI KAISHA v. PRESCOTT.**

(Circuit Court of Appeals, Ninth Circuit. March 16, 1925.)

No. 4385.

Contracts ⬚127(2)—Refusal to arbitrate as required by charter party will not divest court of jurisdiction.

A provision of a charter party that all questions in dispute between the parties, whether of fact or law, of damage or liability, shall be referred to arbitrators, whose award shall be conclusive, and that such arbitration shall be a condition precedent to any action, will not be recognized or enforced by a court of admiralty.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Suit in admiralty by the Tatsuuma Kisen Kabushiki Kaisha against E. L. Prescott. From a decree dismissing the libel, libelant appeals. Reversed, with instructions.

Cosgrove & Terhune, of Seattle, Wash., for appellant.

Bausman, Oldham & Eggerman, Frederick Bausman, and Arthur E. Simon, all of Seattle, Wash., for appellee.

Before ROSS, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge.    This was a libel in personam to recover damages for breach of a charter party. The court below sustained exceptions and dismissed the libel, because it failed to show a compliance with the arbitration provision of the charter party. The stipulation for arbitration reads as follows:

"Any dispute of law or fact arising under this Charter Party shall be referred to arbitration in Seattle of three (3) persons, one appointed by the National Commercial Corporation on behalf of the owners, one by the charterer, and the third by the two chosen. They shall meet in the city of Seattle, and shall proceed in a manner determined by themselves, and their decision or that of any two of them shall be final, and for the purpose of enforcing any award hereunder the agreement may be made a rule of the court. Such arbitration shall be made a condition precedent to any action. Arbitrators shall be commercial men."

It is conceded by the appellee that this stipulation for arbitration is all comprehensive; that it embraces both questions of law and questions of fact—questions of liability and questions of damage. The validity of such stipulations has been the subject of much controversy in the courts. The rule is thus stated in 9 Cyc. 511:

"Agreements to refer disputes to arbitration present an example of what the common law regarded as attempts to oust the jurisdiction of the courts, and as against public policy. The reason of the rule adopted by the courts is by some traced to the jealousy of the courts and a desire to repress all attempts to encroach on the exclusiveness

of their jurisdiction, and by others to an aversion of the courts, from reasons of public policy, to sanction contracts by which the protection which the law affords the individual citizens is renounced. But, whatever may be the reason, it is a well-settled rule of the common law that a clause in an agreement, or a separate agreement, that any or all disputes which may arise thereunder shall be referred to an arbitrator or arbitrators, is unenforceable as an attempt to oust the courts of jurisdiction, and either party may have recourse to them without carrying out his agreement to refer."

That this is the rule in the federal courts does not seem to admit of question. Thus in Mitchell v. Dougherty, 90 F. 639, 645, 33 C. C. A. 205, 211, the court said:

"We have not felt called upon to discuss in detail the several Pennsylvania cases which have been urged upon our attention by the learned counsel for the defendant in error. The question before us is not as to the enforcement of the contract in accordance with the law of the place where it was made, but is as to whether a court of the United States should, because of the parties' agreement in advance to abstain from invoking its jurisdiction, refuse to enforce the contract at all. Upon this question the decisions of the supreme court of the United States are controlling, and they admit of but one conclusion."

In United States Asphalt R. Co. v. Trinidad Lake P. Co. (D. C.) 222 F. 1006, a motion to stay prosecution was interposed because of a similar stipulation in a charter party. In considering the motion Judge Hough traced the history of the rule refusing to give effect to such stipulations down through the English and American cases, and while the rule itself was unsparingly criticized, the learned judge was forced to this conclusion:

"I think the decisions cited show beyond question that the Supreme Court has laid down the rule that such a complete ouster of jurisdiction as is shown by the clause quoted from the charter parties is void in a federal forum. It was within the power of that tribunal to make this rule. Inferior courts may fail to find convincing reasons for it; but the rule must be obeyed, and these motions be severally denied."

The conclusion announced in these cases was fully justified by the authorities. Thus in Insurance Co. v. Morse, 20 Wall. 445, 22 L. Ed. 365, the court had under consideration an agreement on the part of an insurance company not to remove suits against

it into the federal courts, and in discussing the validity of that agreement the court said:

"That the agreement of the insurance company is invalid, upon the principles mentioned, numerous cases may be cited to prove. They show that agreements in advance to oust the courts of the jurisdiction conferred by law are illegal and void. In Scott v. Avery (one of the cases) the Lord Chancellor says: 'There is no doubt of the general principle that parties cannot by contract oust the ordinary courts of their jurisdiction. That has been decided in many cases. Perhaps the first case I need refer to was a case decided about a century ago. That case was an action on a policy of insurance in which there was a clause that in case of any loss or dispute it should be referred to arbitration. It was decided there that an action would lie, although there had been no reference to arbitration. Then, after the lapse of half a century, occurred a case before Lord Kenyon, and from the language that fell from that learned judge, many other cases had probably been decided which are not reported. But in the time of Lord Kenyon occurred the case which is considered the leading case on the subject, of Thompson v. Charnock. That was an action upon a charter party, in which it was stipulated that if any difference should arise it should be referred to arbitration. That clause was pleaded in bar to the action brought upon breach of the contract, with an averment that the defendant was, and always had been, ready to refer the same to arbitration. This was held to be a bad plea, upon the ground that a right of action had accrued, and that the fact that the parties had agreed that the matter should be settled by arbitration did not oust the jurisdiction of the courts.' Upon this doctrine all the judges who delivered opinions in the House of Lords were agreed.

"And the principle, Mr. Justice Story, in his Commentaries on Equity Jurisprudence, says is applicable in courts of equity as well as in courts of law. 'And where the stipulation, though not against the policy of the law, yet is an effort to divest the ordinary jurisdiction of the common tribunals of justice, such as an agreement in case of dispute to refer the same to arbitration, a court of equity will not any more than a court of law interfere to enforce the agreement, but it will leave the parties to their own good pleasure in regard to such agreements. The regular administration of justice might be greatly impeded or interfered with by

such stipulations if they were specifically enforced.' In Stephenson v. P. F. & M. C. Ins. Co., the court say: 'While parties may impose as condition precedent to applications to the courts that they shall first have settled the amount to be recovered by an agreed mode, they cannot entirely close the access to the courts of law. The law and not the contract prescribes the remedy, and parties have no more right to enter into stipulations against a resort to the courts for their remedy in a given case, than they have to provide a remedy prohibited by law; such stipulations are repugnant to the rest of the contract, and assume to divest courts of their established jurisdictions; as conditions precedent to an appeal to the courts, they are void.' Many cases are cited in support of the rule thus laid down. Upon its own merits, this agreement cannot be sustained."

In Hamilton v. Liverpool, etc., Ins. Co., 136 U. S. 242, 10 S. Ct. 945, 34 L. Ed. 419, a condition in a policy of fire insurance that any difference arising between the parties as to the amount of loss or damage of the property insured should be submitted, at the written request of either party, to the appraisal of competent and impartial persons, whose award should be conclusive as to the amount of loss or damage only, and should not determine the question of the liability of the insurance company, was upheld; the court saying:

"Such a stipulation, not ousting the jurisdiction of the courts, but leaving the general question of liability to be judicially determined, and simply providing a reasonable method of estimating and ascertaining the amount of the loss, is unquestionably valid, according to the uniform current of authority in England and in this country."

In Red Cross Line v. Atlantic Fruit Co., 264 U. S. 109, 44 S. Ct. 274, 68 L. Ed. 582, the court again said:

"The federal courts—like those of the states and of England—have, both in equity and at law, denied, in large measure, the aid of their processes to those seeking to enforce executory agreements to arbitrate disputes. They have declined to compel specific performance * * * or to stay proceedings on the original cause of action. * * * They have not given effect to the executory agreement as a plea in bar, except in those cases where the agreement, leaving the general question of liability to judicial decisions, confines the arbitration to determining the amount payable or to furnishing essential evidence of specific facts,

and makes it a condition precedent to the cause of action."

So far as we are advised, there has been no further modification of the general rule by the Supreme Court. In Aktieselskabet Korn-og Foderstof Kompagniet v. Roderiaktiebolaget Atlanten, 250 F. 935, 163 C. C. A. 185, Ann. Cas. 1918E, 491, clause 21 of the charter party was similar to clause 5 here involved. Clause 21 was there interposed as a defense, and in disposing of that defense, the court said:

"Under the law of the state of New York, clause 21 is clearly unenforceable because under the decisions of the Court of Appeals it would be held to affect the remedy only and to be contrary to public policy as ousting the courts of their jurisdiction. Meachem v. Railroad Co., 211 N. Y. 346, 105 N. E. 653, Ann. Cas. 1915C, 851; U. S. Refining Co. v. Trinidad Lake Co. (D. C.) 222 F. 1006. The question being one of general law, the decisions of the Court of Appeals of the state of New York are not binding upon the federal courts. It is, however, fair to assume from Hamilton v. Home Insurance Co., 137 U. S. 370, 11 S. Ct. 133, 34 L. Ed. 708, that an agreement like this, which leaves the disposition of the whole matter to arbitration is not a bar to an action in court, even if it may support an action for breach of the agreement."

And in a concurring opinion Judge Hough added:

"As to clause 21, it is undeniable that American authority is at present as stated in the court's opinion; whether the rule as given can long survive historical and logical criticism, I venture to doubt."

In The Atlanten, 252 U. S. 313, 40 S. Ct. 332, 64 L. Ed. 586, the court said:

"With regard to the arbitration clause we shall not consider the general question whether a greater effect should not be given to such clauses than formerly was done, since it is not necessary to do so in order to decide the case before us."

Again, in Red Cross Line v. Atlantic Fruit Co., supra, the court said:

"As the constitutionality of the remedy provided by New York for use in its own courts is not dependent upon the practice or procedure which may prevail in admiralty, we have no occasion to consider whether the unwillingness of the federal courts to give full effect to executory agreements for arbitration can be justified."

It will thus be seen that, while the rule under consideration has been criticised and

its wisdom questioned, it is nevertheless the established law in the courts of the United States, from which the inferior federal courts are not at liberty to depart. Having reached this conclusion, it becomes unnecessary for us to consider whether the provision for arbitration has any application where a charter party has been repudiated by one of the parties after part performance, or whether the appellant has complied with the agreement for arbitration on its part.

The decree of the court below is reversed, with instructions to overrule the exceptions to the libel, and for further proceedings in accordance with the views here expressed.