## LAPPE v. WILCOX.

(District Court, N. D. New York. September 30, 1926.)

1. **Courts** ⟷259—**State statutes cannot impair or limit jurisdiction of federal courts.**

State statutes, which have the effect of impairing the rights and remedies of nonresident suitors entitled to resort to the federal courts for redress, are invalid and ineffective as to such nonresident suitors.

2. **Courts** ⟷259—**State statute for enforcement of arbitration agreements held not to affect right of nonresidents to maintain action in federal court (Laws N. Y. 1920, c. 275, §§ 2, 5).**

Laws N. Y. 1920, c. 275, §§ 2, 5, providing that arbitration contracts shall be valid and enforceable, and that any suit brought in violation thereof shall be stayed by the Supreme Court or a judge thereof until the arbitration has been had, changes the common law of the state, but affects the remedy only in the courts of the state, and an arbitration agreement does not preclude a nonresident plaintiff from maintaining an action in a federal court in New York against a resident thereof.

At Law. Action by Henry A. Lappe against Harrison J. Wilcox. On motion by defendant to stay action under state statute because of agreement for arbitration. Denied.

Hinman, Howard & Kattell, of Binghamton, N. Y., for plaintiff.

Albert S. Barnes, of Binghamton, N. Y., for defendant.

COOPER, District Judge. This is a motion by the defendant under sections 2 and 5 of the Arbitration Law of the state of New York (chapter 275 of the Laws of 1920) to stay this action until the controversies between the parties have been settled under the arbitration agreement made by the parties to the action.

Plaintiff, a resident of Pittsburgh, Pa., on December 7, 1918, made a contract for the sale of leather on commission with the defendant, a resident of Binghamton, N. Y., which was executed in Binghamton. A controversy subsequently arose concerning the amount due plaintiff. On February 12, 1921, the parties made an arbitration agreement in the city of Binghamton, N. Y., which is as follows:

"Whereas, differences have arisen between the undersigned as to whether there is anything due and unpaid to Henry A. Lappe, of Pittsburgh, Pa., by Harrison J. Wilcox, of Binghamton, N. Y., growing out of the contract of December 7th, 1918, between them; and

"Whereas, each party is anxious to adjust such differences and to prevent their occurrence in the future and to prevent litigation growing out of same:

"Now, therefore, it is agreed by and between the undersigned:

"First, the said Henry A. Lappe agrees, on or before May 1, 1921, to submit to said Harrison J. Wilcox an itemized statement of his alleged claims of indebtedness of every name and nature, growing out of the contract between them, dated December 7, 1918, and the said Harrison J. Wilcox agrees to examine said statement or account, and to report on same to said Henry A. Lappe, within 30 days from its presentation to him as above provided.

"Upon the report of said Harrison J. Wilcox, if the said parties cannot agree, the disputed items are to be submitted to Charles W. Wood, of Pittsburgh, Pa., and Albert S.

Barnes, of Binghamton, N. Y., as arbitrators, and if they fail to agree they are to select a third arbitrator, the decision of the majority to be final in each case.

"Second. Henry A. Lappe further agrees to furnish to said Harrison J. Wilcox, on or before the 1st of each month beginning July 1, 1921, a statement of all indebtedness he claims up to the 1st of the preceding month, the said Harrison J. Wilcox to examine and report on same to said Henry A. Lappe within 20 days from receipt. Any disputed items to be arbitrated as before the expense of the arbitration herein provided for to be shared and paid equally by said Henry A. Lappe and Harrison J. Wilcox. In case either of the arbitrators above named fail, refuse, or are unable to act, a successor is to be designated promptly.

"This agreement to remain in full force and effect until the expiration of the contract of December 7, 1918, between said parties, and to apply to all matters growing out thereof."

Each party subsequently appointed arbitrators, but the arbitrators did not act, because one lived in Pittsburgh and one in Binghamton, and neither would meet with the other at his home city. Subsequently the plaintiff brought this action in this court to recover the alleged commissions due.

The defendant sets up the arbitration agreement, and by virtue of sections 2 and 5 of the arbitration statute of New York (chapter 275 of the Laws of 1920) asks this court to stay the action until plaintiff has proceeded with the arbitration as provided in the arbitration agreement. The pertinent provisions of the statute are as follows:

"Sec. 2. *Validity of Arbitration Agreements.*—A provision in a written contract to settle by arbitration a controversy thereafter arising between the parties to the contract, or a submission hereafter entered into of an existing controversy to arbitration pursuant to title eight of chapter seventeen of the code of civil procedure, shall be valid, enforcible and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract."

"Sec. 5. *Stay of Proceedings Brought in Violation of an Arbitration Agreement or Submission.*—If any suit or proceeding be brought upon any issue otherwise referable to arbitration under a contract or submission described in section 2, the Supreme Court, or a judge thereof, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under a contract containing a provision for arbitration or under a submission described in section 2, shall stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."

The defendant asserts that this statute applies to the parties to this action and that he is entitled to invoke its provisions in this court. The plaintiff contends that the statute cannot impair the jurisdiction of the federal court or affect the right of a nonresident to bring action in the federal court of the state of New York for breach of contract.

Prior to the enactment of this state statute, arbitration agreements were in disfavor and were not enforced by the state courts. Meacham v. Railway Co., 211 N. Y. 346, 105 N. E. 653, Ann. Cas. 1915C, 851. In the federal courts, also, arbitration agreements were in disfavor and were not enforced. Munson v. Straits of Dover S. S. Co. (D. C.) 99 F. 787. Aktieselskabet Korn-og Foderstof Kompagniet v. Rederiaktiebolaget Atlanten, 250 F. 935, 163 C. C. A. 185, Ann. Cas. 1918E, 491. But actions were permitted for damages, based solely on the breach of contract to arbitrate in both courts. Berkovitz v. Arbib, 230 N. Y. 261, 130 N. E. 288. This statute of 1920 has changed the common law of remedies in the state of New York and is binding on the state courts. Berkovitz v. Arbib, 230 N. Y. 261, 130 N. E. 288; Red Cross Line v. Atlantic Fruit Co., 264 U. S. 109, 44 S. Ct. 274, 68 L. Ed. 582.

[1] But statutes of the state of New York cannot affect nonresidents of the state, who have the right, denied to inhabitants of the state, to invoke the jurisdiction of the federal court. From early times it has been consistently held that state statutes which have the effect of impairing the rights and remedies of nonresident suitors entitled to resort to the federal courts for redress are invalid and ineffective as to such nonresident suitors. In Hyde v. Stone, 20 How. 170, 175 (15 L. Ed. 874), the court said:

"But this court has repeatedly decided that the jurisdiction of the courts of the United States over controversies between citizens of different states cannot be impaired by the laws of the states, which prescribe the modes of redress in their courts, or which regulate the distribution of their judicial power. In many cases, state laws form a rule of decision for the courts of the United States, and the forms of proceeding in these courts have been assimilated to those of the states, either by legislative enactment or by their own rules. But the courts of the United States are bound to proceed to judgment, and to afford redress to suitors before them, in every

case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction. Suydam v. Broadnax, 14 Pet. 67 (10 L. Ed. 357); Union Bank v. Jolly's Adm'rs, 18 How. 503 (15 L. Ed. 472)."

In David Lupton's Sons Co. v. Auto Club, 225 U. S. 489, 32 S. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A, 699, section 15 of the General Corporation Law of the state of New York (Laws 1890, c. 563, as amended by Laws 1892, c. 687) was involved. By that section a foreign corporation, other than a money corporation, is prohibited from doing business in the state without having first procured from the secretary of state a certificate that it has complied with certain prescribed conditions. The section further provides:

"No foreign stock corporation doing business in this state shall maintain any action in this state upon any contract made by it in this state, unless prior to the making of such contract it shall have procured such certificate."

The plaintiff in the Lupton Case was a foreign stock corporation domiciled in the state of Pennsylvania, and it brought an action in the federal court in the state of New York against the defendant for breach of contract. One of the defenses was that the Lupton Company could not maintain its action, because it was a foreign corporation doing business in the state of New York without the certificate of authority required by section 15 of the General Corporation Law of that state. The referee to whom the case was referred by stipulation held that the contract was void for violation of that statute and that the complaint should be dismissed. The Supreme Court, in an opinion by Mr. Justice Hughes, held at page 499 (32 S. Ct. 714):

"* * * That the Lupton Company, whether or not it was doing a local business in New York had the right to bring this suit in the federal court. The state could not prescribe the qualifications of suitors in the courts of the United States, and could not deprive of their privileges those who were entitled under the Constitution and laws of the United States to resort to the federal courts for the enforcement of a valid contract. Union Bank v. Jolly's Adm'rs, 18 How. 503, 507 (15 L. Ed. 472); Hyde v. Stone, 20 How. 170, 175 (15 L. Ed. 874); Cowles v. Mercer County, 7 Wall. 118, 122 (19 L. Ed. 86); Insurance Company v. Morse, 20 Wall. 445 (22 L. Ed. 365); Barron v. Burnside, 121 U. S. 186 (7 S. Ct. 931, 30 L. Ed. 915); Lawrence v. Nelson, 143 U. S. 215 (12 S. Ct. 440, 36 L. Ed. 130); In re Tyler, 149 U. S. 164, 189 (13 S. Ct. 785, 37 L. Ed. 689); Barrow Steamship Co. v. Kane, 170 U. S. 100, 111 (18 S. Ct. 526, 42 L. Ed. 964)."

In Johnson v. New York Brewing Co., Ltd., 178 F. 513, 101 C. C. A. 639 (C. C. A. 2d), the same section of the General Corporation Law was invoked and the court said:

"However this may be, it is clear that the Court of Appeals (of New York state) has not yet held a contract void made in such circumstances. It has held that such a contract cannot be enforced in the state courts and that this is the only penalty prescribed. Of course, the federal courts may entertain an action upon a contract which is not void under the state law. Until the state Legislature enacts a law declaring such contracts void, or the highest court of the state construes the present law as so declaring, we think the federal courts should not close their doors to actions arising under such contracts."

In Kawin & Co. v. American Colortype Co., 243 F. 317, 156 C. C. A. 97 (C. C. A. 7), where a statute of Illinois much like section 15 of the General Corporation Law of the state of New York, referred to in the Lupton Case, supra, was involved, it was held that a statute prohibiting suits in any court of the state for failure to file certain reports did not invalidate the contract, where a cause of action had arisen and become complete before the failure to file the report, and that action might be maintained in the federal court.

In Boatman's Bank of St. Louis v. Fritzlen, 221 F. 154, 137 C. C. A. 45, a Kansas statute provided that, before a foreign corporation could take a mortgage, it should pay a certain fee to the secretary of state of Kansas and file with the land board a written contract to be sued in the state. The court said:

"Since, therefore, a failure to qualify under the statute does not affect the instrument, and thus detract from the right, has it any effect upon the remedy—that is to say, upon the right to sue on the instrument involved? We are of opinion that it has not for two reasons: First, any provision against enforcing such a lien, whatever its efficacy as against action in the state courts of Kansas, would not be binding upon the federal courts, and would not preclude suits in the latter tribunals. It is not within the power of the states to limit the jurisdiction of the national courts to entertain a suit. Blodgett v. Lanyon Zinc Co., 120 F. 893 (58 C. C. A. 79); Butler Bros. Shoe Co. v. U. S. Rubber Co., 156 F. 1, 84 C. C. A. 167."

In C. & C. T. & S. Bank v. Corey Bros., 208 F. 976, 126 C. C. A. 64, a statute of the

state of Idaho provided that a foreign corporation could not be sued in a state court, unless it had filed copies of its articles of incorporation in certain public offices, and it was held that such provision does not declare void a contract made by a corporation before obtaining the necessary certificates in compliance with local law, and that the corporation was entitled to enforce such contracts in the federal courts. See, also, Chicot County v. Sherwood, 148 U. S. 529, 13 S. Ct. 695, 37 L. Ed. 546; Farrell v. Stoddard (D. C.) 1 F.(2d) 802, 804, affirmed in Circuit Court of Appeals in Second Circuit under name of Porter v. Beha, 12 F.(2d) 513.

It is clear that this arbitration statute relates to the remedy, and not to substantive rights. In the matter of Berkovitz v. Arbib, 230 N. Y. 261, 270, 130 N. E. 288, 289, the court said:

"The common-law limitation upon the enforcement of promises to arbitrate is part of the law of remedies. Meacham v. Jamestown F. & C. R. R. Co., 211 N. Y. 346, 352 (105 N. E. 653, Ann. Cas. 1915C, 851); Aktieselskabet K. F. K. v. Rederiaktiebolaget Atlanten (D. C.) 232 F. 403, 405; 250 F. 935 (163 C. C. A. 185, Ann. Cas. 1918E, 491); U. S. Asphalt Refining Co. v. Trinidad Lake Petroleum Co. (D. C.) 222 F. 1006, 1011. The rule to be applied is the rule of the forum. Both in this court and elsewhere, the law has been so declared. Arbitration is a form of procedure whereby differences may be settled. It is not a definition of the rights and wrongs out of which differences grow. This statute did not attach a new obligation to sales already made. It vindicated by a new method the obligation then existing." Boatman's Bank of St. Louis v. Fritzlen, supra.

Had the Legislature of the state declared a contract containing an arbitration agreement to be absolutely void, if arbitration was declined by either party, that would affect the rights of the parties as distinguished from the remedy and no action would lie either in federal or state courts in such a contingency. [2] And further there is nothing in the statute which suggests that it was intended to be extended beyond the courts of the state. While the statute does not in so many words refer to or limit its provisions to state courts, that is its plain intent. Section 5, providing for staying the action, expressly says: "The Supreme Court [of New York state] or a judge thereof" shall grant such stay.

A similar statute, section 15 of the General Corporation Law, providing that "no foreign stock corporation * * * shall maintain any action in this state," has been held to mean that no such action shall be brought in any state court. Johnson v. New York Breweries Co., 178 F. 513, 101 C. C. A. 639; Mahar v. Harrington, 204 N. Y. 231, 234, 236, 97 N. E. 587, 38 L. R. A. (N. S.) 210; David Lupton's Sons Co. v. Auto Club, 225 U. S. 489, 32 S. Ct. 711, 56 L. Ed. 1177, Ann. Cas. 1914A, 699.

Whatever the intent, however, of this arbitration statute of New York state, it could not affect the jurisdiction of the federal courts, as previously shown. It is the duty of the federal courts to exercise their powers in every case to which their jurisdiction extends. Hyde v. Stone, supra; Kline v. Burke Construction Co., 260 U. S. 226, 234, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077.

The motion is denied.